E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
GREGG E. MARMARO (Cal. Bar No. 338627)
Assistant United States Attorney
International Narcotics, Money Laundering,
 and Racketeering Section
        1400 United States Courthouse
        312 North Spring Street
        Los Angeles, California 90012
        Telephone: (213) 894-8500
        Facsimile: (213) 894-0142
        E-mail:   gregg.marmaro@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>               v.<br><br>MICHAEL TA,<br><br>          Defendant. | No. 8:22-CR-00183-DOC-2<br><br>PLEA AGREEMENT FOR DEFENDANT<br>MICHAEL TA |

     1.   This constitutes the plea agreement between MICHAEL TA

("defendant") and the United States Attorney's Office for the Central

District of California (the "USAO") in the above-captioned case.

This agreement is limited to the USAO and cannot bind any other

federal, state, local, or foreign prosecuting, enforcement,

administrative, or regulatory authority.

DEFENDANT'S OBLIGATIONS

     2.   Defendant agrees to:

          a.   At the earliest opportunity requested by the USAO and

provided by the Court, appear and plead guilty to Count One of the

Indictment, which charges defendant with Conspiracy to Distribute and to Possess with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A)(vi), (b)(1)(A)(viii).

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.   Pay the applicable special assessments at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

h.   Agree to and not oppose the imposition of the following conditions of supervised release:

i.   The defendant shall not use or possess more than one virtual currency wallet or account, and that one wallet or account must be used for all virtual currency personal transactions. The defendant shall not obtain or open the one virtual currency wallet/account without prior approval of the probation office.  The defendant may use or possess only open public blockchain virtual currencies and is prohibited from using privacy coins.  The defendant

2

shall use the virtual currency wallet or account only for legitimate, non-criminal purposes, and may not sell, offer for sale, or purchase any illegal products through the use of virtual currency.

ii.   The defendant shall not access or offer for sale any products on any darknet website.

iii. The defendant shall not use any software program and/or mobile device messaging application which provides for encrypted end-to-end communications.

iv.   The defendant shall disclose to the United States Probation and Pretrial Services Office all digital devices, screen names, email accounts, social media accounts, messaging applications, and cloud storage accounts, as well as any passwords or passcodes for all such digital devices and accounts, and the defendant may only use or possess such accounts.  The defendant shall disclose any new devices, accounts, applications, passwords, or passcodes, and may not use any such devices prior to obtaining approval from the United States Probation and Pretrial Services Office.

v.   The defendant shall submit the defendant's person, property, house, residence, vehicle, papers, or other areas under the defendant's control, to a search conducted by a United States Probation Officer or law enforcement officer.  Failure to submit to a search may be grounds for revocation.  The defendant shall warn any other occupants that the premises may be subject to searches pursuant to this condition.  Any search pursuant to this condition will be conducted at a reasonable time and in a reasonable manner upon reasonable suspicion that the defendant has violated a condition of his supervision and that the areas to be searched contain evidence of this violation.

i.   Recommend that defendant be sentenced to a term of imprisonment of no less than 180 months and not seek, argue, or suggest in any way, either orally or in writing, that the Court impose a term of imprisonment below 180 months.

### THE USAO'S OBLIGATIONS

3.   The USAO agrees to:

a.   Not contest facts agreed to in this agreement.

b.   Abide by all agreements regarding sentencing contained in this agreement.

c.   At the time of sentencing, move to dismiss the remaining counts of the Indictment as against defendant.  Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

d.   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

e.   Except for criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371), not further criminally prosecute defendant for violations of Title 21 of the United States Code arising out of defendant's conduct described in the agreed-to factual basis set forth in paragraph 14 below.  Defendant understands that the USAO is free to criminally prosecute defendant for any other unlawful past conduct or any

4

1  unlawful conduct that occurs after the date of this agreement.

2  Defendant agrees that at the time of sentencing the Court may

3  consider the uncharged conduct in determining the applicable

4  Sentencing Guidelines range, the propriety and extent of any

5  departure from that range, and the sentence to be imposed after

6  consideration of the Sentencing Guidelines and all other relevant

7  factors under 18 U.S.C. § 3553(a).

8       f.   Recommend that defendant be sentenced to a term of

9  imprisonment of no more than 300 months and not seek, argue, or

10  suggest in any way, either orally or in writing, that the Court

11  impose a term of imprisonment above 300 months.

12                    NATURE OF THE OFFENSES

13  4.   Defendant understands that for defendant to be guilty of

14  the crime charged in Count One of the Indictment, that is, Conspiracy

15  to Distribute and to Possess with Intent to Distribute Controlled

16  Substances, in violation of 21 U.S.C. §§ 846 and 841(a)(1), the

17  following must be true: (1) there was an agreement between two or

18  more persons to distribute and to possess with intent to distribute

19  controlled substances; and (2) defendant joined in the agreement

20  knowing of its purpose and intending to help accomplish that purpose.

21  5.   Defendant understands that for defendant to be subject to

22  the statutory maximum and statutory minimum sentences set forth below

23  as to Count One, the government must prove beyond a reasonable doubt

24  that the conspiracy in which defendant participated involved at least

25  400 grams of a mixture or substance containing a detectable amount of

26  N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide

27  ("fentanyl"), or at least 50 grams of methamphetamine.  Defendant

28  admits that defendant, in fact, knowingly and intentionally conspired

5

to distribute and to possess with intent to distribute at least 400 grams of fentanyl and at least 50 grams of methamphetamine, as described in Count One of the Indictment.

6.    Defendant further understands that the law may require the government to prove beyond a reasonable doubt that the type and quantity of the charged controlled substances fell within the scope of defendant's agreement and were reasonably foreseeable to defendant.  Defendant admits that the distribution of and possession with intent to distribute at least 400 grams of fentanyl and at least 50 grams of methamphetamine fell within the scope of defendant's agreement and were reasonably foreseeable to him.

<u>PENALTIES AND RESTITUTION</u>

7.    Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A), as charged in Count One of the Indictment, is: life imprisonment; a lifetime period of supervised release; a fine of $10,000,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest, and a mandatory special assessment of $100.

8.    Defendant understands that the statutory mandatory minimum sentence that the Court must impose for a violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A), as charged in Count One of the Indictment, is: ten years' imprisonment, followed by a five-year period of supervised release, and a mandatory special assessment of $100.

9.    Defendant understands that defendant will be required to pay full restitution to the victims of the offenses to which defendant is pleading guilty.  Defendant agrees that, in return for

the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victims of the offenses to which defendant is pleading guilty and in amounts greater than those alleged in the counts to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offenses to which defendant is pleading guilty; and (b) any counts dismissed and charges not prosecuted pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts and charges.

10.  Defendant understands that under 21 U.S.C. § 862a, defendant will not be eligible for assistance under state programs funded under the Social Security Act or Federal Food Stamp Act or for federal food stamp program benefits, and that any such benefits or assistance received by defendant's family members will be reduced to reflect defendant's ineligibility

11.  Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release.

12.  Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm,

the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

13.  Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the convictions in this case make it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his convictions on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his pleas may entail, even if the consequence is automatic removal from the United States.

1

FACTUAL BASIS

2      14.  Defendant admits that defendant is, in fact, guilty of the

3  offenses to which defendant is agreeing to plead guilty.  Defendant

4  and the USAO agree to the statement of facts provided below and agree

5  that this statement of facts is sufficient to support pleas of guilty

6  to the charges described in this agreement and to establish the

7  Sentencing Guidelines factors set forth in paragraph 17 below but is

8  not meant to be a complete recitation of all facts relevant to the

9  underlying criminal conduct or all facts known to either party that

10  relate to that conduct.

11      a.  Beginning on a date unknown and continuing to on or

12  about November 15, 2022, in Los Angeles and Orange Counties, within

13  the Central District of California, and elsewhere, defendant MICHAEL

14  TA conspired with Rajiv Srinivasan, and others, to knowingly and

15  intentionally distribute and to possess with intent to distribute

16  controlled substances, including at least 400 grams of a mixture or

17  substance containing a detectable amount of fentanyl, a Schedule II

18  narcotic drug controlled substance, and at least 50 grams of

19  methamphetamine, a Schedule II controlled substance.

20      b.  As a member of the conspiracy, and in furtherance of

21  its goals, Srinivasan was the primary operator of the account

22  "redlightlabs" on the dark web to advertise and accept orders for

23  controlled substances.  Srinivasan also used the encrypted messaging

24  application "Wickr" to communicate with and sell controlled

25  substances to customers.  Srinivasan received virtual currency from

26  customers as payment for controlled substances and routed virtual

27  currency he had received from drug customers through cryptocurrency

28  exchanges.  Srinivasan communicated with defendant regarding the

9

distribution of controlled substances, including sending information to defendant to mail controlled substances to customers who had ordered those drugs from Srinivasan and defendant.  Srinivasan arranged for his sources of supply, Co-Conspirator 1 and Co-Conspirator 2, to deliver controlled substances to defendant for distribution to customers.  Defendant then mailed parcels containing controlled substances to customers who had ordered those drugs from Srinivasan.  Defendant was paid by Srinivasan for distributing controlled substances to customers that had been ordered from Srinivasan and defendant, and Srinivasan paid Co-Conspirator 1 and Co-Conspirator 2 for supplying those drugs to defendant for distribution.  Defendant and Srinivasan possessed digital devices and maintained a shared electronic document to coordinate the distribution of controlled substances.

c.   In furtherance of the conspiracy, Srinivasan and defendant mass marketed purported "M30" pills which they knew in fact contained fentanyl through multiple dark web marketplaces, including Dark0de, Torrez, Abacus, Tor2Door, ASAP, Alphabay, Archetyp, and Incognito.  By operating on the dark web, Srinivasan and defendant utilized extensive, sophisticated, and widely available criminal marketplaces to sell drugs with greater anonymity than would have been possible on the traditional Internet.  A typical dark web advertisement from Srinivasan and defendant read as follows: "pressed oxycodone m30 pill (x100).  100x Quality PRESSED Oxycodone M30 pill. Professional press; M30 Stamp with nice gloss and aesthetic appeal; able to be used orally, nasally, or IV.  *WARNING* These pills SMACK HARD!"  The advertisements noted that these pills "are a professional press with a very potent opioid."

d.   Srinivasan and defendant utilized several other sophisticated methods to conceal their drug distribution and avoid detection from law enforcement, including communicating with drug customers through end-to-end encrypted messaging applications such as "Wickr."  Srinivasan also used cryptocurrency as a medium of exchange with drug customers and suppliers, which he routed through multiple different cryptocurrency exchanges, both legitimate and illicit, in order to disguise the criminal nature of the proceeds.

e.   In furtherance of this conspiracy, defendant and his co-conspirators committed at least the following overt acts:

i.   Between no later than February 7, 2022, and continuing to November 15, 2022, defendant and Srinivasan knowingly and intentionally engaged in at least 3,800 drug transactions to approximately 1,500 unique customers across the country, totaling at least 123,688 pills resembling M30 pills which in fact contained fentanyl, 9,363 grams of methamphetamine, 299 grams of "China white" (fentanyl powder), 296 grams of black tar heroin, and 27 grams of cocaine.  On fourteen of those transactions between February and November of 2022, Srinivasan, working with defendant and others, accepted orders for and distributed fentanyl pills to an individual who Srinivasan believed to be a drug customer, but who was in fact an undercover law enforcement agent (the "UC").

ii.   Through his participation in this conspiracy, defendant and Srinivasan caused the overdose deaths of the following three individuals:

(I)   N.M., of Fort Collins, Colorado, who died of a fentanyl overdose on or about October 23, 2022, at the age of 19 years old.  On or about October 18, 2022, Srinivasan and defendant

11

accepted an order from N.M. for 50 "M30" pills containing fentanyl, which defendant shipped to N.M. on the same date.  N.M. ingested some of those pills, and the use of such pills resulted in N.M.'s death and serious bodily injury.  Fentanyl is a Schedule II narcotic drug controlled substance, and defendant knew that he distributed a federally controlled substance and intended to do so.  But for the use of the fentanyl that defendant distributed, victim N.M. would have lived.

(II) K.M., of The Villages, Florida, who died of a fentanyl overdose on or about August 17, 2022, at the age of 51 years old.  On or about August 11, 2022, Srinivasan and defendant accepted an order from K.M. for 20 "M30" pills containing fentanyl, which defendant shipped to K.M. on the same date.  K.M. ingested some of those pills, and the use of such pills resulted in K.M.'s death and serious bodily injury.  But for the use of the fentanyl that defendant distributed, victim K.M. would have lived.

(III)    D.R.C., of Fayetteville, Arkansas, who died of a fentanyl overdose on or about September 13, 2022, at the age of 27 years old.  On or about September 7, 2022, Srinivasan and defendant accepted an order from D.R.C. for 15 "M30" pills containing fentanyl, which defendant shipped to D.R.C. the next day.  D.R.C. ingested some of those pills, and the use of such pills resulted in D.R.C.'s death and serious bodily injury.  But for the use of the fentanyl that defendant distributed, victim D.C. would have lived.

iii. Additionally, through his participation in this conspiracy, defendant and Srinivasan distributed fentanyl-laced pills to the following two individuals, who died of drug overdoses shortly

after receiving the fentanyl-laced pills from defendant and Srinivasan:

         (I)  J.D., of Livonia, Michigan, who died of a fentanyl overdose on or about June 13, 2022, at the age of 42 years old.  On or about June 9, 2022, Srinivasan and defendant accepted an order from J.D. for 30 "M30" pills containing fentanyl, which defendant shipped to J.D. the next day.

         (II) N.H., of Santa Cruz, California, who died of a fentanyl overdose on or about October 21, 2022, at the age of 31 years old.  On or about October 15, 2022, Srinivasan and defendant accepted an order from N.H. for six "M30" pills containing fentanyl, which defendant shipped to N.H. on the same date.

<u>SENTENCING FACTORS</u>

15.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate between the mandatory minimum and up to the maximum set by statute for the crimes of conviction.

16.  Pursuant to U.S.S.G. §§ 1B1.2(a) and (c), the parties stipulate that defendant committed a separate violation of 21 U.S.C. § 841(b)(1)(C) (distribution of fentanyl resulting in death), in

13

that, on or about October 18, 2022, defendant knowingly and intentionally distributed fentanyl, the use of which resulted in the death of N.M., and that such overdose death resulting from defendant's distribution of fentanyl constitutes a more serious offense than the offense of conviction for purposes of calculating the applicable Sentencing Guidelines base offense level. Accordingly, pursuant to U.S.S.G. §§ 2D1.1(a)(2), 1B1.2(a) and 1B1.2(c), the parties stipulate that the Court should calculate the Sentencing Guidelines as if defendant had been convicted of the offense described in this paragraph and in paragraph 14 and apply a base offense level of 38, which may be greater than the base offense level that would otherwise apply, and is independently supported by U.S.S.G. § 5K2.1.  Defendant will not recommend, argue, or otherwise suggest that the Court impose a base offense level other than 38.

17.  Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 38 | [U.S.S.G. § 2D1.1(a)(2)] |
| Mass-marketing by means of an interactive computer service: | +2 | [U.S.S.G. § 2D1.1(b)(7)] |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate; however, defendant and the USAO agree not to seek, argue, or suggest in any way, either orally or in writing, that the specific offense characteristic under U.S.S.G. § 2D1.1(b)(13) be imposed.

18.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

19. Subject to paragraphs 2(i) and 3(f) above, defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

20. Defendant understands that by pleading guilty, defendant gives up the following rights:

       a.   The right to persist in a plea of not guilty.

       b.   The right to a speedy and public trial by jury.

       c.   The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial. Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

       d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

       e.   The right to confront and cross-examine witnesses against defendant.

       f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

       g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

        h.    Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

WAIVER OF VENUE

    21.  Having been fully advised by defendant's attorney regarding the requirements of venue with respect to the offenses to which defendant is pleading guilty, to the extent the offense to which defendant is pleading guilty was committed, begun, or completed outside the Central District of California, defendant knowingly, voluntarily, and intelligently waives, relinquishes, and gives up: (a) any right that defendant might have to be prosecuted only in the district where the offense to which defendant is pleading guilty were committed, begun, or completed; and (b) any defense, claim, or argument defendant could raise or assert based upon lack of venue with respect to the offense to which defendant is pleading guilty.

WAIVER OF APPEAL OF CONVICTION

    22.  Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

LIMITED WAIVER OF APPEAL OF SENTENCE AND COLLATERAL ATTACK

    23.  Defendant agrees that provided the Court imposes a total term of imprisonment on all counts of conviction of no more than the

greater of: (1) the high end of the Guidelines range corresponding to a total offense level of 37 and defendant's criminal history category as calculated by the Court, and (2) any applicable mandatory minimum sentence, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (f) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7); and any conditions of probation or supervised release agreed to by defendant in paragraph 2 above.

24.  Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the

statement of facts provided herein is insufficient to support defendant's pleas of guilty.

25. This agreement does not affect in any way the right of the USAO to appeal the sentence imposed by the Court.

## RESULT OF WITHDRAWAL OF GUILTY PLEA

26. Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

## RESULT OF VACATUR, REVERSAL OR SET-ASIDE

27. Defendant agrees that if the count of conviction is vacated, reversed, or set aside, the USAO may: (a) ask the Court to resentence defendant on any remaining counts of conviction, with both the USAO and defendant being released from any stipulations regarding sentencing contained in this agreement, (b) ask the Court to void the entire plea agreement and vacate defendant's guilty pleas on any remaining counts of conviction, with both the USAO and defendant

being released from all their obligations under this agreement, or (c) leave defendant's remaining convictions, sentence, and plea agreement intact.  Defendant agrees that the choice among these three options rests in the exclusive discretion of the USAO.

### EFFECTIVE DATE OF AGREEMENT

28.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

### BREACH OF AGREEMENT

29.  Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, and (b) the USAO will be relieved of all its obligations under this agreement.

30.  Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a.   Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.   Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.   Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

<u>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES</u>
<u>OFFICE NOT PARTIES</u>

31.   Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

32.   Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information

to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 17 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

33.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be between the statutory mandatory minimum and within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

34.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional

promise, understanding, or agreement may be entered into unless in a
writing signed by all parties or on the record in court.

<u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

35.   The parties agree that this agreement will be considered
part of the record of defendant's guilty plea hearing as if the
entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

E. MARTIN ESTRADA
United States Attorney

_____          8/1/23
GREGG E. MARMARO                          Date
Assistant United States Attorney

_____          7/28/23
MICHAEL TA                                Date
Defendant

_____          7/28/23
HOWARD SHNEIDER                           Date
Attorney for Defendant MICHAEL TA

22

<u>CERTIFICATION OF DEFENDANT</u>

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____        7/28/23
MICHAEL TA                             Date
Defendant

23

1

<u>CERTIFICATION OF DEFENDANT'S ATTORNEY</u>

2      I am MICHAEL TA's attorney.  I have carefully and thoroughly

3 discussed every part of this agreement with my client.  Further, I

4 have fully advised my client of his rights, of possible pretrial

5 motions that might be filed, of possible defenses that might be

6 asserted either prior to or at trial, of the sentencing factors set

7 forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

8 provisions, and of the consequences of entering into this agreement.

9 To my knowledge: no promises, inducements, or representations of any

10 kind have been made to my client other than those contained in this

11 agreement; no one has threatened or forced my client in any way to

12 enter into this agreement; my client's decision to enter into this

13 agreement is informed and voluntary; and the factual basis set forth

14 in this agreement is sufficient to support my client's entry of

15 guilty pleas pursuant to this agreement.

16

17 _____        **7/28/23**_____
HOWARD SHNEIDER                          Date
Attorney for Defendant
18 MICHAEL TA

19

20

21

22

23

24

25

26

27

28